## In re Mutchler

*Daniel M. Corveleyn*, for petitioners.
*James J. Conavoy*, for respondents.

WILLIAMSON, *J.*, January 7, 2014—This matter comes before the court on the petition to remove executor/prevent auction of decedent's real property ("petition") filed by Terry L. Mutchler, Star Donna Parker, H. Joseph Mutchler, heirs of the estate of Star J. Mutchler, a/k/a Star Jean Mutchler ("decedent"). The decedent died on February 9, 2013, leaving a will dated May 9, 2006 and a first codicil thereto dated December 20, 2010. The will and codicil were admitted to probate on February 20, 2013. Letters of testamentary were granted to David W. Mutchler ("executor").

The heirs to the estate are the decedent's seven (7) children: David W. Mutchler, Terry L. Mutchler, Linda J. Rushin, Scott M. Mutchler, Star Donna Parker, Charles J. Mutchler, and H. Joseph Mutchler. A hearing was held on December 23, 2013 on the petition to remove executor. This court previously cancelled the auction of real property by court order entered November 4, 2013 following the filing of the petition. We took testimony and are now prepared to render a decision.

Removal of a personal representative is determined as follows:

§3182 — GROUNDS FOR REMOVAL

The court shall have exclusive power to remove a personal representative when he:

(1) is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law; or

(2) (repealed section)

(3) has become incapacitated to discharge the duties of his office because of sickness or physical or mental incapacity and his incapacity is likely to continue to the injury of the estate; or

(4) has removed from the Commonwealth or has ceased to have a known place of residence therein, without furnishing such security or additional security as the court shall direct; or

(4.1) has been charged with voluntary manslaughter or homicide, except homicide by vehicle, as set forth in sections 3155 (relating to persons entitled) and 3156 (relating to persons not qualified), provided that the removal shall not occur on these grounds if the charge has been dismissed, withdrawn or terminated by a verdict of not guilty; or

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office.

20 Pa. C.S.A. §3182.

The petitioners allege that the executor has mismanaged the estate or failed to perform a duty imposed by law. The petitioners also allege the executor does not reside in Pennsylvania and has not furnished security. The

petitioners were also concerned with the distribution of some of the personal property, unpaid bills, the cleanliness of the house, and attempts to sell the house. There was also some question as to what other assets may exist in the estate; however, we note that is an issue properly raised following an accounting, or if necessary, a petition to compel an accounting.

Concern for personal property distribution involved pieces of jewelry, a family Bible, and whether or not any items were distributed to non-heir family members. We find the executor's testimony credible as follows:

1. That the executor's daughter received a teacup and saucer and (2) knick-knacks the decedent bought at the Salvation Army;

2. Linda Rushin received the family Bible;

3. The executor retained a gold ring until determining how it should be distributed.

We see no mismanagement or waste of the estate in these actions. The items given to the executor's daughter appear negligible in value and if any heir wants them, they may request it from the executor. There was no testimony from the petitioners as to how the Bible should be distributed; only that it should not have been distributed to Linda. The petitioners can raise this objection to any account filed; however, it is not a matter arising to mismanagement of the estate. We also wonder how the petitioners would distribute the Bible, as there is only one, and yet there are seven heirs. We note that Linda Rushin, the only heir living locally, testified she took the Bible because she read the Bible with her parents every time she visited. The executor seems to have made the sound decision that

Linda would cherish the Bible the most.

The retention of the gold ring by the executor for later distribution is also a wise decision at this time. There are seven heirs, with several at odds over a perceived distribution scheme. Holding the ring until a possible agreement can be reached by all involved appears prudent at this time.

Finally, Linda Rushin testified she received a pearl necklace from the decedent during the decedent's lifetime. Whether she did, or she took it after the decedent's death, we find the executor's testimony credible that he requested Linda return anything she took after the decedent died. This is all the executor can do, and we do not find, under the circumstances, that any mismanagement or failure to perform a duty occurred.

We also find the executor's testimony credible that there was no water shut-off and that the water bill was paid. Likewise, we find the executor's testimony credible that upon notice getting to him of the electric bill, that it was promptly paid. Therefore, we find no waste, mismanagement or failure to perform a duty as executor for unpaid bills.

The petitioners take issue with the cleanliness and care of the real property of the estate on west Main Street, Stroudsburg. This is in conjunction with the petitioners' concern to obtain the best price for the real property in a sale. We believe the house is in a rough condition compared to others currently on the market. The home is an older home, on a busy thoroughfare that is zoned commercial. It is on a .11 acre lot. There are many commercial uses surrounding the property. The pictures introduced as exhibits show the older condition that the home is in at

this time. We understand the sentimental value of the home, and the idea that a cleaner home in good repair will bring a more attractive sales price.

The executor is admittedly away from the Commonwealth a lot as a truck driver. His time is understandably limited preventing his personal attention to see that the house is in pristine condition and the grounds regularly manicured. While this may add some value to the property, and lead to a sale, we find it would not create much added value. There also was no testimony that any of the heirs offered to clean or repair the house to improve the value. Based upon the testimony, we do not find the executor was derelict in any of his duties based upon the condition of the home.

The executor has obtained a drive-by appraisal (outside access only) of $31,000 and a full appraisal (with inside access) of $55,000 from McKeown Real Estate. The petitioners obtained an appraisal of $70,000 from Richard DeLuca. As with any real property, it is only ultimately worth what a willing buyer will pay a willing seller. We find the executor obtained the appraisals to have a sense of the value of the property. The drive-by was because the executor was unavailable to open the house to the appraisers at that time. After receiving negative feedback from other heirs, the executor arranged a full appraisal. The heirs arranged their own appraisal when not fully satisfied. All three appraisals confirm the house would likely bring a modest sale price.

Following a discussion with Thomas McKeown, real estate appraiser and broker, the executor determined the best course of action was a sale by auction. Petitioners did not agree with the agreed minimum reserve bid of $42,000 in order to sell the house (meaning any bid $42,000 or higher would buy the house). There was some discussion

the petitioners would accept $60,000 as a reserve bid, but when a cash buyer was presented by Thomas McKeown, after the auction was cancelled, the petitioners would not agree to a sale at that price.

The actions of the executor in this regard do not arise to mismanagement, waste, or failure to perform a duty. In fact, an auction would allow heirs to bid on the property if they so desired. It would also promptly dispose of the real property, realize proceeds to all heirs, and allow the auction market to set a price. This does not always result in the highest price being realized, but is not out of the ordinary in similar circumstances with similar types of real estate. An auction also eliminates any second guessing of what listing price to set, or what offer to accept. In turn, it would likely reduce chances of disagreement amongst the heirs. As the executor believes an auction is the best way to proceed, and the petitioners previously agreed a $60,000 reserve should be set, we find the matter should proceed to auction as proposed, in the spring of 2014, with a reserve price of $60,000.

The petitioners also take issue with the executor's delay in disposing of the real property. The decedent died in February 2013, and the executor did not obtain the first appraisal until August 2013. The executor did set an auction date with McKeown Real Estate for November 2013, which was only cancelled by order of this court upon the petition filed by the petitioners in this matter.

We do not find that the executor has mismanaged, wasted or failed to perform a duty under these circumstances. Again, the executor admittedly has a busy work schedule. He took time to have all of the heirs (some of whom had to travel great distances) come to the house to take personal property which occurred in May 2013. The executor had

to work with heirs who were questioning his actions and actions of other heirs. Finally, the delay in obtaining an appraisal and listing for auction is not a practice that is out of the ordinary in an estate. This is especially so where there are (7) heirs. While the matter may not have progressed at the speed with which the petitioners preferred, the executor did not mismanage or fail to undertake his duties that would necessitate his removal.[1]

Finally, the petitioners assert that the executor is not a Pennsylvania resident, and therefore, must post security, or be removed under 20 Pa. C.S.A. §3182 (4). Following a great deal of testimony in this regard, we find the executor credible and that he is a Pennsylvania resident. Therefore, no security, or bond, was required to be filed.

The executor stated he is an over the road trucker for a company based in North Dakota. He has been employed in that capacity by his current employer from June 2013 to present. Prior to that, he was unemployed from December 2012-June 2013 having voluntarily left his job due to his mother, the decedent, being sick and then dying. Prior to December 2012, the executor had been employed for a short period of time as a truck driver for a different company based in North Dakota. We note this is a second career for the executor, having previously been a police officer with the Stroud Area Regional Police in Monroe County, Pennsylvania, and now retired.

---

1. We also note the petitioners take issue with the fact Linda Rushin was named as a contingent executor and her serving as same since she and her husband previously filed (and since dismissed) a personal injury suit against the decedent. This was due to Linda Rushin's husband trip and fall and resulting serious injury at decedent's property. For various reasons, which we need not set forth, this is not an issue that applies in this matter. As the executor has not committed acts that require his removal, there is no need to consider Linda Rushin to serve in his place.

18

The executor testified he works six (6) weeks on with one day off per week, and then fifteen (15) consecutive days off. He testified he has owned a home in Carlisle, Pennsylvania for many years, and lives there on his fifteen (15) days off each six (6) week cycle. He lives out of his truck or company provided housing in North Dakota during the six (6) week schedule he is over the road. The executor keeps a mailbox in North Dakota because he gets paid there. He registered a vehicle in November 2013 in North Dakota, which he bought there, because he did not have time to register the initial plate in Pennsylvania while working. The executor spends time at his daughter's house in Bath, Pennsylvania to see her and his grandchildren. The executor used that address when taking out letters because he receives all of his mail there that his daughter either forwards to him or holds for him until he is home from North Dakota. The executor regards his home in Carlisle, Pennsylvania as being his permanent residence. We find this testimony credible.

We note that one's residence is where they consider to be domiciled. In this case, the testimony of the executor supports the fact that he is a resident of Pennsylvania. He considers his domicile to be his home in Carlisle, Pennsylvania. Therefore, there was no need for the executor to furnish security for this estate. As such, the executor has not violated section 3182 (4).

We find no other reason that the interests of the estate are likely to be jeopardized by the executor continuing in office. The executor has been cooperative with counsel for the estate, cooperative with other heirs (contrary to the apparent feelings of the petitioners), and has acted in the best interests of the estate. Therefore, we will deny the petition to remove executor and to prevent auction of

the real property. We will order that an auction take place consistent with certain directives set forth in this opinion.

Finally, we do not find the petitioners acted in any bad faith. Therefore, we will deny the request of the estate to reimburse the advertising expense of the cancelled auction, attorney's fees, and interest and penalty on payment of inheritance tax from the petitioners' share of the estate.

### ORDER

And now, this 7th day of January, 2014, the petition to remove executor and to prevent auction of decedent's real property is denied.

The executor's request that the petitioners reimburse the estate the advertising expense of the cancelled auction, attorney's fees and other costs to defend the petition, and any interest or penalty on payment of the inheritance tax is denied.

It is further ordered as follows:

1. An auction of the real property located at 1670 West Main Street, Stroudsburg, Pennsylvania 18360 shall take place in the Spring of 2014, no later than May 31, 2014.

2. A minimum reserve of $60,000 shall be placed on the real estate at time of auction.